*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0221p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

KATHY NISWANDER,

        *Plaintiff-Appellant,*

    *v.*

THE CINCINNATI INSURANCE COMPANY,

        *Defendant-Appellee.*

No. 07-3738

>

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 06-01086—George J. Limbert, Magistrate Judge.

Argued: April 22, 2008

Decided and Filed: June 24, 2008

Before: GILMAN, ROGERS, and McKEAGUE, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Jerome T. Linnen, Jr., Akron, Ohio, for Appellant. Deborah S. Adams, FROST BROWN TODD LLC, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Jerome T. Linnen, Jr., Akron, Ohio, for Appellant. Deborah S. Adams, Jack B. Harrison, FROST BROWN TODD LLC, Cincinnati, Ohio, for Appellee.

    GILMAN, J., delivered the opinion of the court, in which ROGERS, J., joined. McKEAGUE, J. (p. 14) delivered a separate concurring opinion and GILMAN, J. (p. 15) delivered a separate concurring opinion in response to Judge McKEAGUE'S writing.

---

**OPINION**

---

    RONALD LEE GILMAN, Circuit Judge. This case requires us to address the scope of protection that should be afforded to employees who disseminate confidential documents in violation of their employer's privacy policy in the context of employment-related litigation. In December of 2005, Kathleen Niswander's employment with The Cincinnati Insurance Company (CIC) was terminated after CIC learned that Niswander had delivered confidential, proprietary documents to her lawyers in a class-action lawsuit against CIC. She was fired for breaching the company's Privacy Policy and Code of Conduct. This caused Niswander to file a separate lawsuit against CIC, alleging retaliation under the Equal Pay Act (EPA) and Title VII of the Civil Rights Act of 1964 (Title VII).

1

The parties filed cross-motions for summary judgment, after which the district court granted CIC's motion. Niswander now appeals from that decision, arguing that because she delivered the documents in question at the request of her attorneys in the class-action lawsuit, her actions were protected activity for which she could not be fired under the EPA and Title VII. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A.     Factual background

From March of 1996 until she was terminated in December of 2005, Niswander was employed as a claims adjuster for CIC. She worked from her home during her entire tenure with the company. In December of 2000, a class-action lawsuit was initiated by Arlene Rochlin (the *Rochlin* lawsuit), alleging that CIC had discriminated against women in violation of Title VII, 42 U.S.C. § 2000(e) et seq., and the EPA, 29 U.S.C. § 206(d). Niswander opted-in to the *Rochlin* lawsuit in December of 2003.

According to Niswander, her supervisor Richard Baldwin began retaliating against her once she opted-in to the *Rochlin* lawsuit. She alleges that prior to her joining the lawsuit, Baldwin would call her once a week to discuss her work, but that after she joined the lawsuit he communicated with her only by e-mail. In September of 2004, Niswander contacted Robert Miller in CIC's Human Resources Department to inform him that she believed that Baldwin was retaliating against her. She subsequently informed Baldwin via e-mail of her belief, and she sent a copy of the e-mail to Miller.

In August of 2005, Niswander requested a transfer because she felt that Baldwin was not providing her with the support she needed. Her request was denied. Niswander was placed on CIC's Progressive Problem Resolution Program (PPR) the following month. She had never been placed on PPR prior to that date. According to Charles Robinson, Vice President of the Field Claims Department, Niswander was placed on PPR because of job performance issues that "started long before [she] joined the lawsuit." In October of 2005, Niswander filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) because she believed that CIC had ignored her claims of retaliation.

Niswander communicated with the lawyers in the *Rochlin* lawsuit throughout the period of time in which the alleged retaliation took place. At some undisclosed point in time, Niswander discussed with the *Rochlin* lawyers her belief that Baldwin was retaliating against her. She testified in her deposition that she was told by the attorneys that they "were hoping to bring a retaliation claim in the future."

In late September of 2005, Niswander received two letters from Amy DeBrota, one of the lawyers in the *Rochlin* lawsuit. The letters informed Niswander that CIC had "ask[ed] [the plaintiffs] to provide additional discovery response and documents." In the first letter, Niswander was directed to provide, among other information, "[a]ny documents that relate in any way to the allegations we have made in the Complaint or Amended Complaints or any documents that you have that show that you were treated less favorably (in any way) than a male employee at CIC." The letter concludes by stating that the plaintiffs "must cooperate in discovery or face adverse consequences from the Court, such as preventing us from presenting helpful evidence at trial, or even dismissing some claims altogether."

DeBrota's second letter was primarily intended to provide Niswander with her deposition schedule for the lawsuit, but it also referred to the ongoing discovery requests. Specifically, that letter stated: "[I]if you have *any* documents related to your employment at CIC which you have not already sent in, please send them to me immediately." (Formatting in original.) The letter continued: "I also need you to look around your house and office for any documents you think might

be even remotely helpful to our case and send them in right away. If we do not produce the documents to CIC and cooperate in discovery, we will not be able to use the documents at all."

Niswander, allegedly in response to these letters, gathered up documents from her home office and sent them to DeBrota. She admitted in her deposition that she had "no documents to support an equal pay [claim]." Instead, she sent documents that she believed were relevant to CIC's alleged acts of retaliation against her. Some of the documents that Niswander sent were copies of e-mails back and forth with her supervisors related to her job performance. Other documents, however, were claim-file documents that allegedly would jog her memory regarding instances of retaliation, but that did not in and of themselves contain evidence of retaliation. In sending the documents to her lawyers, some of which included information about CIC's policyholders, Niswander "thought everything was confidential" and that "anything [she] produced was all between the two attorneys, being Cincinnati Insurance['s attorney] and mine."

CIC eventually received the documents that Niswander provided to the *Rochlin* lawyers. The company believed that Niswander's conduct in delivering the documents violated CIC's Privacy Policy, its Code of Conduct, and its Conflict of Interest Policy, all of which expressly prohibit the disclosure of confidential information, including personal information about policyholders. The parties do not dispute that Niswander was subject to these three policies. Upon learning of Niswander's unauthorized dissemination of the documents, Charles Stoneburner, the Manager of the Field Claims Department, was assigned to decide the proper penalty. Stoneburner decided to terminate Niswander. Although he testified at his deposition that he did not know to whom or why Niswander provided the documents, he explained that "[s]he was terminated for violating the privacy policy and Code of Conduct."

Niswander's employment was terminated on December 5, 2005. The termination letter that she received explained that CIC had "learned that [Niswander] took confidential and proprietary documents, including documents from claim files, containing private and confidential information about insureds and claimants without permission for uses unrelated and unnecessary to the performance of your employment by CIC, in knowing violation of various company policies."

## B.     Procedural background

In May of 2006, Niswander filed her initial complaint, alleging that she had been wrongfully terminated by CIC in retaliation for having participated in the *Rochlin* lawsuit. Niswander also claimed that she had suffered emotional distress as a result of CIC's retaliatory actions. The parties consented to have the case decided by a magistrate judge. In addition to its answer, CIC filed a counterclaim for conversion of its property, the latter being based on Niswander's delivery of the confidential documents to her attorneys in the *Rochlin* lawsuit. CIC subsequently filed discovery requests related to Niswander's emotional-distress claims, including requests related to Niswander's job performance. Niswander then amended her complaint to remove all references to emotional distress.

Despite Niswander's amendment to her complaint, CIC filed a motion to compel responses to its discovery requests related to Niswander's job performance. CIC had sought information on the personal circumstances that Niswander had relied on during her deposition to explain alleged job-performance deficiencies. In February of 2007, the district court granted CIC's motion to compel, finding that Niswander had placed her personal life at issue by arguing about her pretermination job performance. Niswander did not promptly comply with the court's order to produce the discovery requests, so the court set a deadline for compliance of May 29, 2007.

Also in February of 2007, CIC filed a motion for summary judgment on Niswander's claims. Niswander then filed her own motion for summary judgment on CIC's claim of conversion. In April

of 2007, the district court granted CIC's motion for summary judgment on Niswander's retaliation claim. The court also granted Niswander's motion for summary judgment on CIC's counterclaim for conversion. Niswander now appeals the district court's order on CIC's motion to compel as well as the order granting CIC's motion for summary judgment. CIC is not appealing the district court's grant of summary judgment to Niswander on the conversion claim.

## II. ANALYSIS

### A.    Standard of review

We review de novo a district court's grant of summary judgment. *Int'l Union v. Cummins*, 434 F.3d 478, 483 (6th Cir. 2006). Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B.    Niswander's retaliation claim

Niswander alleges that CIC retaliated against her because she joined and participated in the *Rochlin* lawsuit. She points to a change in how she was treated by her supervisor following her initial decision to opt in to the lawsuit and her subsequent dismissal after CIC learned that she had turned over confidential company documents. According to Niswander, she delivered the documents in response to a request by her attorneys in the *Rochlin* lawsuit, which itself was in response to a discovery request by CIC. CIC responds by arguing that because the documents that Niswander delivered were not germane to the EPA claims at issue in the *Rochlin* lawsuit, and were potentially relevant only to a future claim of retaliation, her breach of the company's privacy policy was a legitimate ground for her dismissal.

Title VII forbids an employer from "discriminat[ing] against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII] [the so-called "opposition clause"], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII] [the so-called "participation clause"]." 42 U.S.C. § 2000e-3(a). Unlawful employment practices under Title VII include any actions taken on the basis of race, color, religion, sex, or national origin that "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2.

In order to establish a prima facie case of retaliation under Title VII, an employee must establish that (1) he or she engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action. *Morris v. Oldham County Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000). The Supreme Court in *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S. Ct. 2405 (2006), however, made clear that the scope of Title VII's retaliation provision is broader than that of Title VII's discrimination provision. *See also* Civil Rights Act of 1964, §§ 703(a), 704(a), 42 U.S.C. §§ 2000e-2(a), 2000e-3(a). In contrast to Title VII's discrimination provision, the "adverse employment action" requirement in the retaliation context is not limited to an employer's actions that affect the terms, conditions, or status of employment, or those acts that occur in the workplace. *See Burlington N.*, 126 S. Ct. at 2412-14. The retaliation provision instead protects employees from

conduct that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2415 (internal quotation marks omitted).

Once the employee presents sufficient evidence to make out a prima facie case, the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for its actions. *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 862 (6th Cir. 1997) (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). If the employer satisfies this burden, the employee must then demonstrate by a preponderance of the evidence that the legitimate reason offered by the employer was in fact only a pretext designed to mask retaliation. *Avery Dennison*, 104 F.3d at 862.

The parties frame their arguments as a question of whether Niswander's delivery of the confidential CIC documents to her *Rochlin* attorneys should be analyzed under the "opposition clause" or the "participation clause" of Title VII. Niswander contends that because she allegedly delivered the documents in response to a request from her lawyers in the *Rochlin* lawsuit, her action should be considered participation in that lawsuit. CIC, on the other hand, argues that because the documents in question were relevant only to a potential future retaliation claim, her action should be considered as opposition to that alleged retaliation.

"The distinction between employee activities protected by the participation clause and those protected by the opposition clause is significant because federal courts have generally granted less protection for opposition than for participation in enforcement proceedings." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir. 1989). With respect to the participation clause, we have recognized that the clause's "exceptionally broad protections . . . extend[] to persons who have participated in any manner in Title VII proceedings." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 582 (6th Cir. 2000) (citation and internal quotation marks omitted). "[O]nce the activity in question is found to be within the scope of the participation clause, the employee is generally protected from retaliation." *Booker*, 879 F.2d at 1312.

The opposition clause, on the other hand, covers conduct such as "complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under Title VII; and opposing unlawful acts by persons other than the employer—e.g., former employers, union, and co-workers." *Johnson*, 215 F.3d at 579. We have explained that "the only qualification that is placed upon an employee's invocation of protection from retaliation under Title VII's opposition clause is that the manner of [the employee's] opposition must be reasonable." *Id.* at 580. Under either clause, the plaintiff has the burden of showing that she engaged in protected activity. *Id.* at 578.

Simply deciding whether Niswander's actions should be analyzed under the participation clause or the opposition clause of Title VII, however, will not fully resolve the underlying issue in this case. Because summary judgment was granted to CIC, the key issue is whether the district court erred in finding that, as a matter of law, Niswander's delivery of the confidential documents was not protected activity. Determining whether her conduct is considered participation in the *Rochlin* lawsuit or opposition to perceived retaliation is necessary, but not sufficient, to answer that question. We must therefore determine, as a matter of first impression, under what circumstances the delivery of confidential documents in violation of company policy is considered protected activity.

### 1.      *Whether Niswander's conduct constituted participation in the* **Rochlin** *lawsuit*

Niswander's claims were analyzed by the district court under the opposition clause without any explanation as to why her delivery of the confidential documents was not considered participation in the *Rochlin* lawsuit. She argues on appeal that her conduct was participatory because she "produced the documents in response to discovery requests from CIC." In support of this argument, Niswander points to the two letters that she received from one of her attorneys in the

*Rochlin* lawsuit, expressing the need to cooperate with discovery and asked her to locate "any documents related to your employment at CIC which [she had] not already sent in." She also alleges that she was responding directly to CIC's Fifth Request for Production. CIC, she contends, was "essentially request[ing] that she produce all documents[] which she felt supported her claims for discrimination."

Temporally speaking, CIC does not dispute that the documents were delivered while Niswander was a participant in the *Rochlin* lawsuit. But that timing alone does not afford her the broad protections of the participation clause. Niswander seeks to justify her delivery of the documents on the basis of document-production requests that she never read, and she has never disputed her own admission that she had "no documents to support an equal pay [claim]." This admission is fatal to her argument that her conduct should be deemed participation in the *Rochlin* lawsuit. If the documents that Niswander had given to her lawyers had been directly (or even indirectly) relevant to the EPA claims raised in the *Rochlin* lawsuit, her delivery of those documents would clearly constitute participation in that lawsuit. No explanation has been offered by either party as to why Niswander's lawyers felt that the documents in question were subject to CIC's document request. But Niswander's statement makes clear that she herself did not believe that the documents were relevant to the *Rochlin* lawsuit.

This is not a case of an employee mistakenly or inadvertently delivering confidential information out of a belief that the documents provided direct proof of discrimination. Instead, Niswander delivered numerous documents, some of which were copies of e-mails from her supervisors related to her job performance, but some of which were claim-file documents that included confidential personal information of insured individuals. Those claim-file documents were delivered in order to help trigger Niswander's memory of instances of alleged retaliation.

There is no dispute that she had those documents in her possession as a result of her employment duties, but the fact that she innocently acquired them is not sufficient to overcome her intentional and unnecessary dissemination of documents that were irrelevant to her EPA claim. Our analysis would be different if the documents that Niswander had given to her lawyers, and that they in turn produced to CIC, had reasonably supported her claim of gender-based pay discrimination—or if she reasonably believed that they did. But on the basis of the facts before us, her delivery of the documents to her attorneys in the *Rochlin* lawsuit does not qualify as participation in that lawsuit.

An individual's delivery of relevant documents during the discovery process or the giving of testimony at a deposition clearly falls within the ambit of participating "in any manner" in a Title VII proceeding. *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997) (explaining that the purpose of the participation clause "is to protect the employee who utilizes the tools provided by Congress to protect his rights"). But concluding that Niswander's conduct here is protected participation in the *Rochlin* lawsuit would provide employees with near-immunity for their actions in connection with antidiscrimination lawsuits, protecting them from disciplinary action even when they knowingly provide irrelevant, confidential information solely to jog their memory regarding instances of alleged retaliation.

### 2.    *Whether Niswander's conduct constituted opposition to unlawful conduct*

Despite concluding that Niswander's actions did not constitute protected participation in the *Rochlin* lawsuit, we must still determine whether her conduct was protected under Title VII's opposition clause. That determination requires the careful balancing of competing interests. A balance must be achieved between the employer's recognized, legitimate need to maintain an orderly workplace and to protect confidential business and client information, and the equally compelling

need of employees to be properly safeguarded against retaliatory actions. Allowing too much protection to employees for disclosing confidential information may perversely incentivize behavior that ought not be tolerated in the workplace—namely, the surreptitious theft of confidential documents as potential future ammunition should the employee eventually feel wronged by her employer. On the other hand, inadequate protection to employees might provide employers with a legally sanctioned reason to terminate an employee in retaliation for engaging in activity that Title VII and related statutes are designed to protect.

There is a paucity of caselaw addressing the production of confidential information in the context of a retaliation claim. The few circuit courts that have faced the issue have all chosen a balancing test to determine whether the unauthorized disclosure of the documents should be protected. One such case is *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756 (9th Cir. 1996). In granting CIC's motion for summary judgment, the district court relied almost entirely on *O'Day* and the case of *Watkins v. Ford Motor Co.*, No. C-1-03-033, 2005 WL 3448036 (S.D. Ohio Dec. 15, 2005).

The plaintiff in *O'Day* was denied a promotion by his employer and was laid off one month later. Because O'Day believed that he had been denied the promotion and laid off because of his age, he filed a lawsuit alleging a violation of the Age Discrimination and Employment Act (ADEA), which contains an antiretaliation provision that is identical to the one found in Title VII. *See* 29 U.S.C. § 623(d).

During discovery, O'Day produced documents that he had found by rummaging through files in his supervisor's office on the night that he was initially denied the promotion. The district court noted that the file "was clearly not meant for general inspection" because "[n]ot only was the file kept in a closed drawer in his supervisor's desk, but it contained notes and memoranda about sensitive personnel matters and was prominently marked 'personal/sensitive.'" *O'Day*, 79 F.3d at 758. O'Day photocopied the documents and showed them to another employee. Once McDonnell Douglas learned of O'Day's conduct, it terminated his employment. McDonnell Douglas later moved for summary judgment, arguing that O'Day's copying and distribution of the confidential documents immunized the company from any liability for discrimination. In response, O'Day argued that his conduct could not provide a legitimate reason for terminating his employment because it was protected activity under the ADEA's opposition clause.

O'Day further claimed "that by gathering evidence for an eventual lawsuit, he was participating in the investigation of an unlawful employment practice under the ADEA, or at the very least opposing such a practice." *Id.* at 763. The Ninth Circuit applied the balancing test that it uses in the Title VII context for determining whether O'Day's conduct was protected activity. Under the test, "[t]he court must balance the purpose of the Act to protect persons engaging reasonably in activities opposing . . . discrimination, against Congress'[s] equally manifest desire not to tie the hands of employers in the objective selection and control of personnel." *Id.* (internal quotation marks omitted).

Ultimately, the *O'Day* court "[struck] the balance . . . in favor of McDonnell Douglas" because "O'Day committed a serious breach of trust, not only in rummaging through his supervisor's office for confidential documents, but also in copying those documents and showing them to a co-worker." *Id.* The court noted that there was no explanation for why O'Day chose to preserve evidence of layoff decisions during a time when he had yet to be laid off. *Id.* In affirming the grant of summary judgment to McDonnell Douglas, the court explained its rationale as follows:

> In balancing an employer's interest in maintaining a "harmonious and efficient" workplace with the protections of the anti-discrimination laws, we are loathe [sic] to provide employees an incentive to rifle through confidential files looking for

evidence that might come in handy in later litigation. The opposition clause protects reasonable attempts to contest an employer's discriminatory practices; it is not an insurance policy, a license to flaunt [sic] company rules or an invitation to dishonest behavior.

*Id.* at 763-64.

*Watkins*, the other case relied upon by the district court, arose out of an initial claim of discrimination under Ohio state law and related to Ford Motor's failure to promote Watkins over a period of 28 years. As part of the discovery in the discrimination case, Watkins produced copies of confidential employee profiles that contained information about salaries and performance. Ford Motor subsequently terminated Watkins's employment because of his disclosure of the employee profiles, and Watkins added a claim of retaliation to his lawsuit. The court granted Ford Motor's motion for summary judgment on the retaliation claim and rejected Watkins's argument "that his copying and disclosure of personnel information is activity that is protected under Ohio's anti-retaliation law." *Watkins*, 2005 WL 3448036, at *7.

Watkins alleged that "he found the profiles in a book that had been left out in the open, the papers were not marked as confidential, and he disclosed the profiles only to his counsel." *Id.* He did, however, obtain the documents "way before filing his EEOC charge and/or his first complaint against Ford." *Id.* at *1. The court explained that if it

were to adopt [Watkins's] argument that such conduct is protected activity, "plaintiffs everywhere would be entitled, under the umbrella of protected activity, to steal company information and, so long as they give the information to their lawyer, not only be able to avoid disciplinary action by their employer, but also be empowered to successfully maintain a claim against their employer if adverse action is taken for the misconduct." This result finds no support in Ohio law and is not one the Court is willing to countenance absent compelling authority requiring it to do so. Far from being entitled to protection under the law, plaintiff's conduct was counterproductive, wrongful, and a breach of his employer's trust.

*Id.* at *7 (citation omitted).

Relying heavily on *O'Day*, the district court in *Watkins* concluded that "a reasonable jury could not determine that the documents were 'innocently acquired'" because Watkins had "committed a serious breach of trust by looking through defendant's files and copying documents that obviously were not intended for general inspection and then providing those documents to his attorneys." *Id.* at *7-8. The court also rejected Watkins's argument that he was entitled to protection because he obtained the files for use in a lawsuit, "particularly since plaintiff could have sought that information by securing counsel and going through the proper legal channels." *Id.* at *8.

Another case that is instructive on this issue is *Kempcke v. Monsanto Co.*, 132 F.3d 442 (8th Cir. 1998), in which the Eighth Circuit addressed a retaliation claim that was brought by an employee who was fired for refusing to return confidential documents that he had given to his attorney. The claim was brought under the ADEA. Kempcke had discovered documents on his company-issued computer that he believed revealed a plan by Monsanto "to weed out senior managers, including Kempcke, at least partially because of their ages." *Id.* at 445. He "confronted his supervisor with these documents and requested an explanation," conduct that the Eighth Circuit concluded was "clearly protected activity" under the opposition clause of the ADEA. *Id.*

Kempcke also gave the documents to his attorney and "told his supervisor that Monsanto must deal with his attorney on the question of whether the documents would be returned." *Id.* The court described that conduct as "at least arguably oppositional or litigation activity, because it placed

documents that might evidence discrimination in the hands of a legal professional who would litigate the issue on Kempcke's behalf if he could not resolve the matter informally with Monsanto." *Id.* Although giving the documents to Kempcke's lawyer "was generally consistent with opposing unlawful age discrimination," the court explained that it must also "consider whether that conduct was so disruptive, excessive, or generally inimical to [the] employer's interests . . . as to be beyond the protection of § 623(d)." *Id.* (alteration and ellipsis in original) (citations and internal quotation marks omitted).

The *Kempcke* court emphasized the fact that "Kempcke innocently acquired the documents, discovering them in a computer assigned to him by Monsanto." *Id.* at 446. Kempcke's innocent acquisition was "akin to the employee who is inadvertently copied on an internal memorandum, or who discovers a document mistakenly left in an office copier." *Id.* The court concluded that "when documents have been innocently acquired, and not subsequently misused, there has not been the kind of employee misconduct that would justify withdrawing otherwise appropriate § 623(d) protection." *Id.* Although "employee insubordination is ordinarily a legitimate non-discriminatory reason for adverse action," the *Kempcke* court explained that "when the insubordination consists of refusing to cease what a jury could find to be reasonable ADEA-protected activity, such as retaining a document that may evidence on-going discrimination, summary judgment dismissing a retaliation claim is not appropriate." *Id.* The Eighth Circuit thus reversed the district court's grant of summary judgment to Monsanto. *O'Day* was explicitly distinguished on the basis that *O'Day* "involv[ed] improper dissemination of an employer's documents to third parties *other than the plaintiff's attorney*." *Id.* (emphasis in original).

The courts in *O'Day*, *Watkins*, and *Kempcke* all applied some form of a balancing test to determine whether the employee's unauthorized dissemination of the documents qualified as protected activity. *See also Jefferies v. Harris County Cmty. Action Ass'n*, 615 F.2d 1025, 1036 (5th Cir. 1980) (balancing the employer's "legitimate and substantial interest in keeping its personnel records and agency documents confidential" with the employee's alleged "need for surreptitious copying and dissemination of the documents"); *Abernathy v. Walgreen Co.*, 836 F. Supp. 817, 820-21 (M.D. Fla. 1992) (rejecting the employee's claim that he should be protected for disseminating a personnel record outside of the company, instead finding that the employee "demonstrated neither an urgent need to disseminate the record outside the Walgreen organization nor a need that reasonably outweighed Walgreen's interest in confidentiality"). In all of these cases, significant weight was placed on how the documents were obtained and to whom they were distributed.

The ultimate question under the balancing test is whether the employee's dissemination of confidential documents was reasonable under the circumstances. This type of test is consistent with the general notion that oppositional activity must be reasonable in order to receive protection under Title VII and other similar statutes. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000) ("[T]he only qualification that is placed upon an employee's invocation of protection from retaliation under Title VII's opposition clause is that the manner of the opposition must be reasonable.")

The balancing test can be applied regardless of whether the employee's actions arise under the opposition clause or the participation clause, and the form of the employee's action (opposition or participation) can be considered in determining whether the employee's actions are reasonable. As discussed in Part II.B.1 above, Niswander's acknowledgment that the documents in question were not relevant to the *Rochlin* lawsuit prevents a finding that her delivery of the confidential documents constituted participatory activity. An employee's dissemination of confidential documents in other situations, however, might qualify as participatory. Under a balancing test, the strong protections that are normally afforded an employee based on his or her participation in a Title VII lawsuit, investigation, or hearing may lead a court to conclude that the delivery of confidential

documents by a participant in such a lawsuit would qualify as protected activity, although the same action by someone who is simply opposing discrimination would not.

The analysis of a participation claim does not generally require a finding of reasonableness, as opposed to the requirement that oppositional conduct be reasonable. But when confidential information is at issue, a reasonableness requirement is appropriate. Given that an individual who has filed a lawsuit under Title VII has available the tools of civil discovery, a showing of reasonableness when confidential documents are disseminated outside of the discovery structure provides protections for employees and employers alike.

Based on the analysis applied by the courts in the cases discussed above, we believe that the following factors are relevant in determining whether Niswander's delivery of the confidential documents in question was reasonable: (1) how the documents were obtained, (2) to whom the documents were produced, (3) the content of the documents, both in terms of the need to keep the information confidential and its relevance to the employee's claim of unlawful conduct, (4) why the documents were produced, including whether the production was in direct response to a discovery request, (5) the scope of the employer's privacy policy, and (6) the ability of the employee to preserve the evidence in a manner that does not violate the employer's privacy policy. These factors are designed to take into account the employer's "legitimate and substantial interest in keeping its personnel records and agency documents confidential" and yet protect the employee's alleged "need for surreptitious copying and dissemination of the documents." *Jefferies v. Harris County Cmty. Action Ass'n*, 615 F.2d 1025, 1036 (5th Cir. 1980).

The district court in the present case, in reliance on *O'Day* and *Watkins*, concluded as follows:

> [T]he Court finds that Defendant's interest in ensuring compliance with its policies of privacy and the law, and maintaining the confidentiality of its clients' personal information outweighs Plaintiff's interest in preserving what she considered to be evidence of unlawful retaliation on the part of Defendant. This is so especially in light of the fact that Plaintiff could have preserved this evidence without violating the law and her employer's policy and trust as she could have taken notes of the incidents that she felt spurned retaliation instead of taking pictures and claims file information that jogged her memory of these incidents and giving them to her attorney. Moreover, this "evidence" that Plaintiff handed over to her attorney does not prove retaliation in and of itself as Plaintiff herself admitted that the documents that she gave her attorney relating to claims file information only served to trigger her memory about incidents which she believed constituted retaliation.

The circumstances surrounding Niswander's delivery of the documents in question are generally undisputed. Through her work as a field claims specialist, she had access to confidential documents related to CIC policyholders. These documents were properly in her possession at her home office. At some point during the course of the *Rochlin* lawsuit, Niswander discussed with her lawyers perceived retaliation by CIC due to her involvement in the lawsuit. She also received two letters from the *Rochlin* lawyers asking her for documents related to the EPA claim. Niswander then searched through the documents she had in her possession, looking for documents related to the EPA claim and, by her own admission, documents related to CIC's alleged retaliation. She found no documents related to the EPA claim, but provided an unspecified number of other documents to her lawyers that did nothing more than jog her memory about incidents that she believed constituted retaliation.

As the district court explained, Niswander could have preserved the alleged evidence of retaliation in other ways; in particular, she could have taken notes of the incidents that she believed

demonstrated retaliation instead of delivering documents that contained confidential policyholder information. Producing confidential documents for the sole purpose of jogging one's memory, when there are readily available alternatives to accomplish the same goal, does not constitute the kind of reasonable opposition activity that justifies violating a company's privacy policy.

Although employees deserve protection when they make reasonable attempts to preserve evidence of illegal employment practices, including discrimination and retaliation, "we are loathe [sic] to provide employees an incentive to rifle through confidential files looking for evidence that might come in handy in later litigation." *O'Day*, 79 F.3d at 763. To hold in favor of Niswander would turn the opposition clause into "a license to flaunt [sic] company rules or an invitation to dishonest behavior." *Id.* at 764. So even after viewing the evidence in the light most favorable to Niswander, we conclude that her production of the documents was not reasonable under the six-factor test set forth above.

The only factors that arguably weigh in Niswander's favor are factors one and two, but even those do not weigh heavily in her favor. Although she had access to the documents through her employment, Niswander did not innocently acquire the documents in the same manner as the plaintiff in *Kempcke*, who came across evidence of potential age discrimination in a company computer that had been issued to him. *See Kempcke*, 132 F.3d at 445. Rather than innocently stumbling upon evidence of illegal employment practices, Niswander specifically searched through the CIC documents that she had at her home office for the purpose of uncovering evidence of retaliation. Such behavior cannot be classified as truly innocent acquisition.

As for the second factor, Niswander's providing the documents to her *Rochlin* attorneys is less problematic than giving them to a fellow employee. But in light of the fact that Niswander had alternative means to inform her *Rochlin* counsel of the alleged retaliation, her behavior cannot be condoned simply because she limited the dissemination of the documents in question to her attorneys.

Niswander's delivery of the confidential documents, therefore, does not qualify as protected activity, so it cannot provide support for her prima facie case of retaliation. And even if we were to assume that Niswander's other evidence of retaliation (such as the e-mails with her supervisor and her being placed on PPR) is sufficient to make out a prima facie case of retaliation for her participation in the *Rochlin* lawsuit, her delivery of the confidential documents is a legitimate nondiscriminatory reason for CIC's decision to terminate her employment. Niswander asserts in rebuttal that there is a genuine issue of material fact as to whether CIC's stated reason for terminating her was pretextual because (1) she produced the documents in response to a document request from CIC, and therefore her action falls under an exception to the Code of Conduct, and (2) CIC did not mark the produced documents as confidential once the documents were returned to CIC.

A plaintiff who is trying to show that the employer's stated reason for termination is pretextual "is required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate his [or her] discharge, or (3) that they were *insufficient* to motivate discharge." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (citation and internal quotation marks omitted; emphasis in original). Niswander argues that she has shown both that her termination had no basis in fact and was not actually motivated by a violation of CIC's Code of Conduct.

There is an exception to the Code of Conduct that permits disclosure of confidential information where it "is legally mandated, authorized by the company or required for the proper conduct of business." Niswander contends that she produced the documents in question in response to a document request from CIC, and that this made her disclosure of confidential policyholder

information both legally mandated and authorized by the company. CIC's document request, however, concerned only those writings relevant to the class-action EPA claim. Her production of irrelevant, confidential documents, when other avenues of preservation were readily available, was neither legally mandated nor authorized by CIC.

Niswander's alternative assertion is that CIC's failure to mark the produced documents as confidential proves that her delivery of the documents did not actually motivate its decision to fire her. But as CIC points out, the violation for which Niswander was terminated was the initial disclosure of the documents. The "horse was out of the barn," in other words, by the time CIC received the documents from opposing counsel in the *Rochlin* lawsuit, so whether CIC subsequently marked the documents as confidential has no bearing on whether she was fired for delivering the documents or because of impermissible retaliation.

Moreover, even if the decision to terminate Niswander for producing the documents ultimately proved to be flawed, Niswander has failed to show the presence of a genuine issue of material fact regarding Stoneburner's honest belief that she had violated the company's privacy policy. "[A]s long as an employer has an honest belief in its proferred nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Majewski v. Auto. Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (citation omitted). As we have explained, "the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998). Niswander has provided no evidence to rebut Charles Stoneburner's testimony that he fired her because he reasonably believed that she had violated the company's privacy policy. We thus conclude that summary judgment was properly granted to CIC because Niswander has failed to show that the stated reason for her termination was pretextual.

## C.    CIC's motion to compel

Niswander's final issue on appeal relates to the district court's order granting CIC's motion to compel discovery with regard to Niswander's mental and emotional issues, including her history of counseling, treatment, and allegations of violence in her marriages. The court granted the motion after concluding that Niswander had placed her emotional and mental status at issue by alleging a pattern of retaliation that began when she joined the *Rochlin* lawsuit. Specifically, the court concluded that Niswander's "emotional state is indeed relevant because she used her personal life, emotional issues and medical problems as justifications or excuses to [CIC's] management for her lapses in performance during the tenure of her employment." The court rejected Niswander's assertions of spousal and psychotherapist privilege because "she fail[ed] to provide the Court with sufficient information upon which to meet her burden for showing good cause for a protective order, especially since it appears that she disclosed issues relating to her emotional issues and her marriages to [CIC's] management when confronted about her performance."

In granting CIC's motion to compel, the district court denied Niswander's motion for a protective order, but limited the disclosure of the records at issue to Niswander and her counsel, CIC's counsel, and any relevant expert witnesses. The court limited the disclosure after "recognizing the sensitive nature of the information to be disclosed." Niswander had not yet complied with the discovery order when the district court granted summary judgment to CIC. Because we have concluded that CIC is entitled to summary judgment, we have no need to reach the merits of this aspect of Niswander's appeal.

### III.  CONCLUSION

For all the reasons set forth above, we **AFFIRM** the judgment of the district court.

---

**CONCURRENCE**

---

McKEAGUE, Circuit Judge, concurring.  I concur in the majority's opinion affirming summary judgment in favor of CIC but write separately to point out a couple of wrinkles in the majority's balancing test.  The majority sets forth a six-factor balancing test for determining whether Niswander's delivery of confidential documents to her attorney was reasonable.  With the sixth factor—"the ability of the employee to preserve the evidence in a manner that does not violate the employer's privacy policy"—being placed within the mix of factors, maj. op. at 10, one could read the majority opinion to permit an employee to breach her employer's privacy policy even when there are nonbreaching alternatives within her reach if a particular tribunal believes that one or more of the other factors weigh heavily enough in her favor.

This reading raises a troubling question.  Why, if nonbreaching alternatives are available, should an employee's affirmative decision to breach her employer's privacy policy be judicially sanctioned?  The question almost answers itself—if she has "the ability . . . to preserve the evidence in a manner that does not violate the employer's privacy policy," then she must exercise that ability.  An employee does not act reasonably when she favors her own expediency over employer and customer privacy and confidentiality. *See Holden v. Owens-Illinois, Inc.*, 793 F.2d 745, 751 (6th Cir. 1986) ("An employee is not protected by Title VII when he violates legitimate company rules, knowingly disobeys company orders, disrupts the work environment of his employer, or willfully interferes with the attainment of the employer's goals." (quoting *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1446 (9th Cir. 1985))).  It is only when an employee's reasonable activities clash against an employer's legitimate job requirements and workplace rules that a court must balance those two competing interests under Title VII.  Unreasonable activities and illegitimate business concerns should not be variables in that calculus.

Moreover, it is unclear from the majority's formulation whether each factor is on equal footing with the others.  If, for example, "the contents of the [confidential] documents" (maj. op. at 10) taken by the employee have no possible relevance to any claim of discrimination or retaliation, can it really be that the employee's action was reasonable?  And, yet, under the majority's balancing test, if one or more of the other five factors weigh in favor of the employee, it appears (at least conceptually) that the employee's breach could still be deemed reasonable, protected activity under Title VII.

The facts of this case, however, do not present us with the opportunity to iron out these wrinkles.  As the majority recognizes, the case does not turn solely on whether Niswander had a nonbreaching way to preserve the information in the confidential documents (she did), nor does it turn solely on the evidentiary value of many of those documents (nil). Maj. op. at 10–11.  With so many factors weighing against Niswander, no one factor can be deemed to be the tipping point.  Thus, we must leave these matters to a future panel presented with a case more closely drawn. *Van Hook v. Anderson*, 488 F.3d 411, 425 (6th Cir.), *cert. denied*, 128 S. Ct. 614 (2007) ("We leave to another day any further refinement of our holding which may be necessitated by a different set of facts than those presented here.").

---

**CONCURRENCE**

---

RONALD LEE GILMAN, Circuit Judge, concurring.  I write this separate concurrence to express my disagreement with the concurring opinion of Judge McKeague, who raises concerns about the possibility of "permit[ting] an employee to breach her employer's privacy policy even when there are nonbreaching alternatives within her reach if a particular tribunal believes that one or more of the other factors weigh heavily enough in her favor." (Concurring Op. at 14)  This view implies that if a nonbreaching alternative exists, then an employee's breach of the company's privacy policy can never be reasonable.  Although we have no need to resolve this issue under the facts of this case, I am concerned that giving controlling weight to the sixth factor to the exclusion of the other five would essentially be an adoption of the rebuttable-presumption test applied by the district court in *Laughlin v. Metropolitan Airports Authority*, 952 F. Supp. 1129 (E.D. Va. 1997), a test rejected on appeal by the Fourth Circuit in favor of the kind of balancing test that we have embraced herein.  149 F.3d 253, 260 (4th Cir. 1998).  I am, in sum, unwilling to foreclose the possibility that an employee's dissemination of confidential documents might be reasonable under the totality of the circumstances despite having a nonbreaching alternative available, as for example in a case where an employee reasonably believes that she is being subjected to discrimination and takes confidential documents to an attorney for advice and counsel.  *See Kempcke v. Monsanto Co.*, 132 F.3d 442 (8th Cir. 1998).