NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0395n.06

No. 20-6098

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| STELLA DULANEY; DAVID FOWLER, | ) | |
| | ) | **FILED** |
| Plaintiffs-Appellants, | ) | Aug 23, 2021 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| FLEX FILMS (USA), INC.; AUDI CHATURVADI; | ) | COURT FOR THE WESTERN |
| VIJAY YADAV, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

**BEFORE: GRIFFIN, WHITE, and READLER, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Plaintiffs Stella Dulaney and David Fowler sued their former employer, Defendant Flex Films, Inc., and two of its employees, Defendants Audi Chaturvadi and Vijay Yadav, alleging discrimination and retaliation. The district court granted summary judgment in Defendants' favor, and we **AFFIRM**.

**I.**

Defendant Flex Films manufactures flexible polyester packaging films for a wide range of consumer products. Based in Elizabethtown, Kentucky, it is the only American subsidiary of the UFLEX group, an India-based corporation that operates polyester packaging-film manufacturing facilities around the world. Plaintiff David Fowler worked at Flex Films as its Chief Marketing Officer from May 20, 2016, until his employment was terminated on April 5, 2017. Plaintiff Stella Dulaney worked at Flex Films as Field Services Manager from February 1, 2016, until her employment was terminated on February 7, 2017. At all times relevant to this appeal, Defendant

AnantShree "Audi" Chaturvadi was the Vice Chairman of Flex Films and Defendant Vijay Yadav was the Head of Business. Both are men of Indian descent.

Fowler was interviewed and hired by Chaturvadi. According to Chaturvadi, he had to "do a lot of convincing" to get corporate in India to hire Fowler because Fowler had "changed a lot of jobs" in the prior 10 years. R. 22-5, PID. 284–85. As Chief Marketing Officer, Fowler was responsible for managing certain sales accounts and a team of four salespersons. He reported to Chaturvadi.

According to Flex Films, Fowler's employment was terminated for two reasons. The first was for violating company policy by giving unapproved price discounts (in the form of rebates and price reductions) to two clients, which Flex Films says caused an unexpected $223,000 loss of profit.

Second, Flex Films cites Fowler's and his team's repeated failure to meet monthly sales goals. Fowler and the four members of his team were each assigned target sales goals. Flex Films management tracked Fowler's team's progress toward their goals and provided Fowler with both an in-progress and a final monthly report. On March 2, 2017, after Fowler's team hit only 76.62% of its February sales goal, Chaturvadi sent Fowler an email informing him that his failure to improve his team's sales numbers was a "troubling trend" and that Fowler needed to "push [his] team further as discussed." R. 22-4, PID. 277. On March 20, 2017, Deepak Chopra, the Manager of Sales and Marketing, circulated an in-progress report to Fowler and management showing Fowler's team had hit only 29.87% of its March goal as of that date. Chaturvadi replied in an email to Fowler the same day, saying, "Dave, [w]e can't really be planning to close the month on less than 50 percent of the product target . . . [p]lease push and let's get close to the target this month[.]" R. 22-4, PID. 278. Fowler's team finished at 56.34% of its March sales goal; Tanvir

2

Singh hit 1.67% of his goal, Joe Hearne 46.60% of his goal, Vikrant Khurana 80.51% of his goal, and Fowler himself 0% of his goal (zero tons sold out of a goal of twenty). Fowler admitted in his deposition that the performance of everyone except Khurana was unsatisfactory.

On April 5, 2017, Chaturvadi terminated Fowler's employment. Chaturvadi cites Fowler's unauthorized pricing changes, which Chaturvadi described as a "blatant disregard of . . . protocol" that cost Flex Films $223,000, and Fowler's team's failure to meet sales targets a single time "despite multiple follow-ups from [Chaturvadi]." R. 22-5, PID. 287–93. According to Chaturvadi, Fowler "wasn't really managing" his team, there was "very little communication" between Fowler and members of his team, and when issues did arise, Fowler "would not take ownership of the situation, but instead point to his team and put th[at] salesperson under scrutiny." *Id.* at 288. After Fowler's employment was terminated, his duties and accounts were assigned to other existing employees. He was not replaced.

As Field Services Manager, Plaintiff Stella Dulaney was tasked with supervising the Research and Development Department. She was hired by Dr. Steve Sargeant, then the Director of Research and Development. Dulaney attended community college for a year and a half but never obtained a degree. Sargeant testified that he hired Dulaney because it was "not possible to hire people with all the skills you want" in Elizabethtown, and he "switched to the mode of hiring people with relevant experience that were intelligent and [that he] could train." R. 31-1, PID. 1486. While Dulaney was working at Flex Films, she began taking community-college courses again. According to Sargeant, while she was under his leadership she was "doing very well[.]" R. 31-1, PID. 1481. Sargeant does acknowledge, however, that in at least one instance—the "Soft Touch – Dec 7, 2016 Run at Dunmore" report—he had to rewrite one of Dulaney's reports because Yadav asked a series of questions about the report and Dulaney was not able to provide the

requisite level of technical detail desired by Yadav.  In an email, Dulaney admitted that her "responsibilities and background do not include the technical depth that [Yadav] is requiring on [the Soft Touch – Dec 7, 2016 Run at Dunmore report]."  R. 23-7, PID. 722.

In January 2017, Flex Films' Research and Development Department underwent an internal restructuring at the recommendation of Sargeant.  The department was effectively split in two, with Sargeant taking over Research and Development and a new hire, Deepak Mehta, overseeing the new "Technical Services Department."  Under the restructuring, Dulaney's position was moved from Sargeant's chain of command to Mehta's.  According to Defendants, at the time Dulaney was moved to Mehta's supervision, plans were already underway to eliminate the Field Services Manager position in favor of a new, higher-level position called "Application Engineer," which would require at least a "BA/BS in Chemical, Polymer, Plastics Engineering," along with other scientific-education requirements.

On February 7, 2017, Dulaney's position was eliminated and Dulaney's employment was terminated.  According to Chaturvadi, Dulaney's position was eliminated because "it was not providing the value that it needed to provide[.]"  R. 23-8, PID. 771.  According to Yadav, Dulaney was not kept on because "[d]espite management's efforts to train and educate Dulaney . . . her performance demonstrated a lack of technical education, technical understanding, and technical/scientific proficiency."  R. 23-4, PID. 660.  Defendants cite Dulaney's performance on the "Soft Touch – Dec 7, 2016 Run at Dunmore" report as evidence that she did not have the technical background necessary for the new position.  Since Dulaney was fired, her former duties are either "not being done" because there is "no focus anymore" on her prior responsibilities, or have been picked up by Sargeant and other existing employees.  R. 31-1, PID. 1484.  Defendants began external advertising for the new Application Engineer position online in March 2017.

According to Fowler and Dulaney, the reasons cited by Flex Films for their respective terminations do not tell the whole story. They say that Flex Films' management favored Indian nationals and American citizens of Indian descent over Caucasian Americans, and sought to replace Caucasian-American employees with employees of Indian descent. As evidence, Fowler testified that during a managers' meeting sometime between May and September 2016, Chaturvadi told those present, "[i]f you guys can't get this plant in line, we will fire everybody and replace them with Indians." Sargeant recalled being part of a meeting where Chaturvedi said "something like that," but could not recall if Chaturvedi said "with Indians." R. 31-1, PID 1485.

Plaintiffs also cite a January 13, 2017 Facebook chat message Dulaney received from John Phillips, Flex Films' Human Resources Manager, whose employment had recently been terminated. Phillips wrote:

> Vijay [Yadav] was very uncomfortable with my level of push back and challenging relative to employee safety concerns and the behavior of Indian leaders. So, I know how Vijay [Yadav] felt, but what has shocked me is that Audi [Chaturvadi] did not engage me at all and just totally went with whatever Vijay [Yadav] told him. I don't know why they would tell folks not to speak to me. I left professionally, not with any emotion. I'm sure it just part of Vijay [Yadav]'s hidden agenda. Anyway, definitely for the best. I'm [sic] feel bad for the Americans that remain. Vijay [Yadav]'s agenda is absolutely about protecting the Indians right or wrong and once Audi [Chaturvadi] turns a blind eye, Americans will get tortured and push [sic] out in a big way. I was the only one challenging that behavior which is why I was terminated. Very disappointed that Audi did not speak with me. My challenges to Vijay [Yadav] were all about Audi's agenda for the culture of the site. . . . You're definitely on his radar, it's just a matter of time. You should look for opportunities to help Deepak [Mehta] and see if he's receptive to utilizing your skills, but simultaneously you should be evaluating external opportunities. Unless Deepak [Mehta] truly becomes your advocate, Vijay will have you terminated, probably before the summer. And there is no one to advocate your case to Audi [Chaturvadi]. That's why I had to go. . . . That's all posturing. That's Vijay doesn't want him there, that's why Deepak's skill set is so high. He's being positioned. If he could remove Steve [Sargeant] and Dave [Fowler] <u>tomorrow</u> he would. Both of them are senior enough to know this is true. It's all political gamesmanship now. I can't comment about Steve's [Sargeant] trust, but I can say that he's much more concerned and focused on his own future, than yours. Major accounts being moved (Dave) [Fowler], Deepak's selection (Steve) [Sargeant], it's all petty chess moves.

> The environment at Flex will be volatile and borderline hostile in 2017. Again, that's why I had to be the first to go. It's all very clear to me. If folks have their eyes open, my termination sends a clear signal.

R. 32-1, PID. 1633–37.[1]  Plaintiffs never deposed Phillips because he was "not cooperative," though they admitted he was "not unavailable" for a deposition.  R. 44, PID. 1708.  Sargeant also heard from Phillips that Yadav "was out to get five people[,]" two of whom were Dulaney and Fowler, but said he never heard Yadav say anything to that effect directly.  R. 31-1, PID. 1482–83.  Additionally, Sargeant testified that he had heard "many people," including Yadav, make generally demeaning remarks about Americans, including that "American people don't work very hard, or they are stupid, or they don't listen."  R. 31-1, PID. 1481.[2]  He also said he had "heard . . . on several occasions" that Indian nationals were given healthcare at no additional cost while American employees had to pay part of their healthcare costs, R. 31-1, PID. 1489, and that some Indian nationals were not asked to move to Elizabethtown when they accepted their jobs.  Plaintiffs provided no additional evidence of either assertion, however.

According to Dulaney, Flex Films' management also disfavored women.  Dulaney testified that she was told by Sargeant during a meeting that there were no women in management positions at UFLEX globally prior to the opening of the Elizabethtown location, and that the company only

---

[1] Phillips's Facebook chat message was entered into the record as a series of screenshots. It appears that portions of the message were cut off from the screenshots, causing some discontinuity in the quoted text.

The district court declined to consider Phillips's message or his conversation with Sargeant about Yadav's purported "hidden agenda" because both statements are hearsay and Plaintiffs did not argue below that the statements fall into a hearsay exception.  Because Plaintiffs abandoned their discrimination claims and Phillips's statements are not relevant to the prima facie analysis of Plaintiffs' retaliation claims, we need not address whether the district court erred in excluding Phillips's statements.

[2] We note that, like Phillips's Facebook chat message, the anti-Caucasian American statements attributed to Chaturvadi and Yadav are not relevant to the prima facie analysis of Plaintiffs' retaliation claims.

had five women in management. Dulaney complained to Sargeant during her time at Flex Films that Yadav, when reviewing her work product, was "harassing [her], nitpicking everything [she] did again, [and that] nothing was ever good enough." R. 23-3, PID. 544. Dulaney testified that she told Sargeant that she believed she was being picked on by Yadav because she was non-Indian and a woman. Sargeant told her to talk to Phillips, who was still Human Resources manager at the time. Dulaney testified that in December 2016, she complained to Phillips that Yadav was "harassing" her, but she could not "recall if [she] specifically bought up sex, race, or nationality" in those conversations. R. 23-3, PID. 549. Phillips told Dulaney that she should "take the time over the holidays to think about if [she] wanted to continue on with the company." R. 23-3, PID. 550. Sargeant also spoke with Phillips about Dulaney. Sargeant told Phillips that Dulaney felt the environment was "very uncomfortable for her" and a "hostile work environment" but Sargeant could not recall whether he told Phillips that Dulaney was being harassed or discriminated against on the basis of her sex, race, or national origin. R. 31-1, PID. 1492. Sargeant also "passed complaints" from Dulaney up to Flex Films' former CEO, Pradeep Tyle, "a few times," before he left in mid-2016. R. 31-1, PID. 1483. On January 31, 2017, Dulaney forwarded an email chain to Peggy Salmon, a Human Resources Generalist, that Dulaney believed showed that Yadav was "trying to humiliate [her] infront [sic] of fellow employees." R. 23-7, PID. 762. In the email chain, Yadav said that he was "miffed" that Dulaney had (earlier in the email chain) been "dubious[ly]" praised by (eventual co-Plaintiff) Andrea Harshfield for bringing to light a consumer error that the consumer had self-reported to Dulaney. *Id.* at 758–59. Dulaney met with Salmon the same day but could not remember if she brought up her complaints that Yadav was discriminating against her based on her sex, race, or national origin.

On July 14, 2017, Fowler, Dulaney, and another recently terminated employee, Andrea Harshfield, filed this action against Flex Films, Yadav, and Chaturvadi. Plaintiffs alleged four claims: (I) unlawful discrimination under Kentucky Revised Statutes § 344.040; (II) retaliation under Kentucky Revised Statutes § 344.280; (III) violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*; and (IV) wage discrimination under Kentucky Revised Statutes § 337.423. Harshfield was the sole plaintiff in Counts III and IV, and those counts were dismissed when Harshfield settled and voluntarily dismissed her claims with prejudice.

Defendants moved for summary judgment, arguing that Plaintiffs failed to create a genuine issue of fact on their discrimination and retaliation claims. After oral argument, the district court granted Defendants' motion for summary judgment on both claims. The district court first found that Phillips's Facebook message and conversation with Sargeant about Yadav's "hidden agenda" were hearsay and declined to consider them. Then the district court found that Plaintiffs had abandoned their discrimination claims because instead of responding to the discrete-discriminatory-act arguments Defendants made in their motion for summary judgment addressing Count I, Plaintiffs attempted to recharacterize Count I of their complaint to have been asserting hostile-work-environment claims instead of discrete-discriminatory-act claims. The district court further determined that Fowler's retaliation claim failed because he never engaged in protected activity and Dulaney's failed because she presented no evidence that Chaturvadi, Mehta, and Yadav, the decisionmakers who terminated her employment, were aware of her protected activity.

This appeal followed.

## II.

We review *de novo* a district court's order granting summary judgment. *M.J. ex rel. S.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 445 (6th Cir. 2021). Summary judgment is

8

proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## A.

Count I of Plaintiffs' complaint alleged discrimination under a discrete-discriminatory-act theory. Specifically, Fowler and Dulaney alleged that their employment was terminated because they are Caucasian and American, and Dulaney's also because she is female. They cited their respective terminations as the adverse employment action taken against them. Defendants filed a motion for summary judgment addressing these claims. Instead of responding to Defendants' arguments that Plaintiffs failed to make out a prima facie case of discrimination under a discrete-discriminatory-act theory, Plaintiffs argued that they had made out viable hostile-work-environment claims. The district court declined to address Plaintiffs' new hostile-work-environment claims, since they were not alleged in the Complaint, and it declined to address the merits of Plaintiffs' discrete-discriminatory-act claims because Plaintiffs failed to address them in their opposition to Defendants' motion for summary judgment.

On appeal, Plaintiffs contend that the district court erred in dismissing their discrete-discriminatory-act claims because their opposition to the motion for summary judgment cited facts that supported their discrete-discriminatory-act claims, even if they did not provide any argument as to *how* those facts supported their discrete-discriminatory-act claims. Appellants' Br. at 24–25.

The district court did not err in granting Defendants' motion for summary judgment on Plaintiffs' discrete-discriminatory-act claims. The district court held that Plaintiffs abandoned their discrete-discriminatory-act claims when they failed to discuss them in their opposition to Defendants' motion for summary judgment. Our precedents support a finding of abandonment in those circumstances. *See Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 564 n.1 (6th Cir.

2021) (plaintiff abandoned Title VII claims not discussed in opposition to motion for summary judgment or on appeal); *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment."); *Lisan v. Wilkie*, 835 F. App'x 831, 834–35 (6th Cir. 2020); *Alexander v. Carter ex rel. Byrd*, 733 F. App'x 256, 261 (6th Cir. 2018); *Nowlin v. Nova Nordisk Inc.*, No. 17-5507, 2018 WL 1805141, at *3 (6th Cir. Feb. 28, 2018) (order); *Haddad v. Sec'y, U.S. Dep't of Homeland Sec.*, 610 F. App'x 567, 568 (6th Cir. 2015) (per curiam); *Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (per curiam).

**B.**

In their opposition to Defendants' motion for summary judgment, Plaintiffs argued that they had created a genuine issue of fact on their hostile-work-environment claims. Instead of asking to amend their complaint, Plaintiffs proceeded as if their complaint alleged hostile-work-environment claims. The district court found that the Complaint alleged no such claim, and declined to entertain them.

Count I of the Complaint alleges that Plaintiffs "were discriminated against in their employment on the basis of" protected characteristics, and that "Defendants took unlawful adverse employment actions against Plaintiffs based on their national origin by terminating their employment and replacing them with H1-B visa Indian nationals." R. 1-1, PID. 13 (Compl. ¶ 53–55). Count II alleges retaliation. Nowhere does the Complaint mention a hostile work environment or allude to a claim based on a hostile work environment. Discrete-discriminatory-act and hostile-work-environment claims are both species of discrimination claims, but they are "different in kind." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). They are

different theories with different elements, and alleging one is not enough to put a defendant on notice that it must defend against the other. *See, e.g.*, *Taylor v. Donahoe*, 452 F. App'x 614, 620 (6th Cir. 2011) (finding allegations of discrete acts of discrimination insufficient to allege a hostile-work-environment claim); *see also Schramm v. Slater*, 105 F. App'x 34, 40 (6th Cir. 2004) ("Disparate treatment and hostile work environment arguments both allege violation of Title VII rights. However, a disparate treatment argument is analytically distinct from a hostile work environment argument—the tests for the two theories of liability have different elements—thus indicating that [p]laintiff's hostile work environment argument was not sufficient to preserve the disparate treatment argument before this Court."). Because Plaintiffs never moved to amend their complaint and a party cannot allege a new claim in response to a motion for summary judgment, the district court did not err in declining to address Plaintiffs' new hostile-work-environment claims. *See Tucker v. Union of Needletrades, Indus. & Textile Emps*., 407 F.3d 784, 788 (6th Cir. 2005).

## C.

Count II alleges that Flex Films terminated Plaintiffs' employment in retaliation for complaining about discriminatory treatment. The district court dismissed Fowler's retaliation claim because he never engaged in protected activity and dismissed Dulaney's claim because she failed to present evidence that the relevant decisionmakers—Yadav, Chaturvadi, and Mehta—were aware of her protected activity when they eliminated her position.

Section 344.280(1) of the KCRA makes it unlawful "for a person, or for two (2) or more persons to conspire . . . [t]o retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or

11

hearing[.]" Ky. Rev. Stat. Ann. § 344.280(1). Retaliation claims under the KCRA are evaluated under the same standards as Title VII retaliation claims. *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435 (6th Cir. 2009). A Title VII retaliation claim can be established "either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (quoting *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 538 (6th Cir. 2008)). In the absence of direct evidence,

> [i]n order to establish a prima facie case of retaliation under Title VII, an employee must establish that (1) he or she engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action.

*Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008). If the employee makes out a prima facie case of retaliation, the burden shifts to the employer to produce evidence of a legitimate, nonretaliatory reason for its actions. *Id.* If the employer satisfies this burden, the employee must then demonstrate that the employer's proffered nonretaliatory reason for its actions was in fact only pretext for retaliatory conduct. *Id.*

Neither Fowler nor Dulaney provided direct evidence of retaliation, so each must make out a prima facie case of retaliation based on circumstantial evidence. Fowler admitted during his deposition that he never complained to management about discriminatory treatment, thus conceding that he never engaged in protected activity, which his counsel acknowledged at oral argument before the district court. Fowler's retaliation claim therefore fails at the first step and was appropriately dismissed. *See id*.

Defendants do not contest that Dulaney engaged in protected activity or that her employment was terminated. Accordingly, only the second and fourth elements of her prima facie retaliation claim are at issue. The district court found that Dulaney could not satisfy the second

element because there was no evidence that Chaturvadi, Yadav, or Mehta—the relevant decisionmakers—knew about Dulaney's protected activity when they terminated her employment. Dulaney contends that was error because she followed company policy in reporting her sex, race, and national-origin-discrimination complaints to her supervisor, Sargeant.[3]  Appellants' Br. at 31.

But Defendants deny knowledge of Dulaney's protected activity, and Dulaney never provided evidence that Sargeant or Phillips (or anyone else) ever relayed her complaints about sex, race, or national-origin discrimination to Chaturvadi, Yadav, or Mehta.  Dulaney could have deposed Phillips to learn whether he discussed her complaints with any of the decisionmakers, but she did not do so.  And though there are some situations where a decisionmaker's knowledge of protected activity can be inferred from the circumstances, *see Mulhall v. Ashcroft*, 287 F.3d 543, 552–53 (6th Cir. 2002), Dulaney failed to create a genuine issue of fact as to whether the circumstances here give rise to an inference that any of the decisionmakers knew about her protected activity.  *See Fenton v. HiSAN, Inc.*, 174 F.3d 827, 832 (6th Cir. 1999) (plaintiff failed to satisfy the second element of prima facie retaliation claim even though plaintiff followed company policy in complaining about harassment to her supervisor because there was no evidence that the relevant decisionmaker was aware of her complaint at the time of adverse action); *see also Evans v. Pro. Transp., Inc.*, 614 F. App'x 297, 301 (6th Cir. 2015) (general corporate knowledge of protected activity is not enough; plaintiff's claim failed because there was no evidence that the relevant decisionmaker had knowledge of protected activity); *Frazier v. USF Holland, Inc.*, 250 F. App'x 142, 148 (6th Cir. 2007) (summary judgment was proper because decisionmaker who

---

[3] Dulaney also complained to Chaturvadi, Phillips, and Salmon directly about Yadav being critical of her, but Dulaney could not recall whether she ever told them that she believed Yadav was discriminating against her because of her race, sex, or national origin.

terminated plaintiff's employment had no knowledge of plaintiff's prior discrimination claim). Accordingly, Dulaney cannot make out a prima facie case of retaliation and Defendants were entitled to summary judgment on her retaliation claim.

**III.**

For the reasons set forth above, we **AFFIRM**.