NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 14a0893n.06

Case No. 13-6603

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Dec 03, 2014*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| KARL TARTT, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| WILSON COUNTY, TENNESSEE, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE: MERRITT, WHITE, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Appellant Karl Tartt sued Wilson County, Tennessee for refusing to hire him under alleged discriminatory policies prohibited by Title VII of the Civil Rights Act of 1964 and the Tennessee Human Rights Act. In December 2008, Tartt submitted a job application to the Wilson County Animal Control department, indicating he was interested in "Animal Control/open position." When the co-located Solid Waste Disposal department hired white applicants the following year, Tartt filed a Charge of Discrimination against the County with the Equal Employment Opportunity

Commission in August 2009. He filed this suit in federal court soon thereafter. Wilson County moved for summary judgment, arguing that Tartt had not established a prima facie case under either the disparate-treatment or disparate-impact theories of discrimination under Title VII. The district court agreed, and granted the County summary judgment on all of Tartt's claims. For the reasons that follow, we **AFFIRM**.

## I.    BACKGROUND

### A.    Factual Background

Appellant Karl Tartt[1] lives in Rutherford County, Tennessee. Appellee Wilson County, located just north of Rutherford County, operates a landfill. Two of Wilson County's departments have offices at the landfill site: Animal Control and Solid Waste Disposal. According to a signed charge filed with the Equal Employment Opportunity Commission ("EEOC"), Tartt went to the landfill offices in December 2008 "to apply for the job of animal control officer." (R.110-2, Page ID #1614. *See also* R.1, Page ID #11 and R.13, Page ID #76.) Heather Christian, the receptionist, greeted him. Tartt secretly recorded his conversation with Christian as well as conversations he had with other employees at the site thereafter. (R.49-1, Page ID #609.) Tartt requested a job application, and Christian asked him, "What do you want, Animal Control or. . ." and Tartt replied,

---

[1] There were two plaintiffs in the case before the district court. Plaintiff Cedric Jennings chose not to appeal.

"Yes." (*Id*. at Page ID #611 (omission in original)). The office has separate applications for Animal Control positions and for Solid Waste positions. Tartt filled out an application for Animal Control, writing at the top, "Animal Control/open position." (*Id*.) He asked if his application would be kept on file if he did not get the position, and Christian responded that it would. (R.53-1, Page ID #641.) Tartt returned his completed application and left.[2]

The following month, Tartt called three times to ask about the status of his application. (R.53-1, Page ID #643-47.) He recorded each call. On two of these calls, Tartt reiterated he was interested in a job in Animal Control. (*Id*. at Page ID #643, 646.) During his final call, he was connected with Cindy Lynch, who manages hiring for both Animal Control and Solid Waste Disposal. She asked what position he was interested in, and he responded that he had applied for Animal Control. (*Id*. at 646.) Lynch told him that while they would accept applications any time, they did not presently have any positions open. (*Id*.) Tartt told Lynch there had been an open position when he applied. (*Id*.) She responded that the last open position had been open six or seven months prior. (*Id*. at Page ID

---

[2]As noted by the district court, neither Tartt nor Wilson County has retained a copy of his application. Tartt stated he received a copy at the time he applied, but that he could not locate it later. (R.49-1, Page ID #611.) Tartt also stated that he "thought he sent it to his attorney," but counsel could not locate it. (*Id*.) Despite policies mandating that departments retain copies of employment applications, Wilson County has not presented a copy of the application from its records. (R.26, Page ID #251.)

#646-47.)  Tartt asked if the Department still had his application on file; Lynch replied that the applications were kept at another location, and assured him she would check.  (*Id*. at Page ID #647.)

Before Tartt submitted his application in December 2008, the most recent open position in Animal Control had been in July 2008.  (R.26, Page ID #250.)  That position was advertised in a local newspaper in August 2008.  (*Id*.)  In September 2008, the Department hired Nick Forbes on a part-time basis and promoted him to full-time status the following month.  (*Id*. at Page ID # 251.)  Forbes continued in this capacity as late as May 2012, and the department has not hired another Animal Control Officer since his hiring.  (*Id*.)

## B.    Procedural History

Tartt filed a Charge of Discrimination against Wilson County with the EEOC in August 2009.  (R.110-2, Page ID #1614.)  In December 2009, Tartt and another plaintiff[3] filed this action against the county in federal court, alleging claims of race discrimination under both disparate-treatment and disparate-impact theories in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Tennessee Human Rights Act ("THRA"), and 42 U.S.C. §§ 1981 and 1983.  (R.1, Page ID #15-17.)  Plaintiffs also sought class certification regarding their disparate-impact claims, which the court ultimately denied.  Wilson County sought

---

[3]*See supra* note 1.

summary judgment on the remaining individual claims, which the district court granted. Tartt now appeals.

## II.    ANALYSIS

### A.    Standard of Review

We review de novo a district court's grant of summary judgment. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Kalich v. AT&T Mobility, LLC*, 679 F.3d 464, 469 (6th Cir. 2012)). Summary judgment is properly granted if the record, construed in the light most favorable to the non-moving party, presents no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Jones v. Sandusky Cnty.*, 541 F. App'x 653, 659 (6th Cir. 2013) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Material facts for summary judgment purposes are those "that might affect the outcome of the suit under the governing law." *Jones*, 541 F. App'x at 659 (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted)).

The movant bears the initial burden of demonstrating that no genuine issue exists regarding a material fact. *Harvey v. Campbell Cnty.*, 453 F. App'x 557, 560 (6th Cir. 2011) (citing *Celotex Corp.*, 477 U.S. at 323). The nonmoving party must then set forth specific facts to show that a material fact is in dispute. Fed. R. Civ. P. 56(c). A dispute exists "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Jones*, 541 F. App'x at 659 (quoting *Anderson*, 477 U.S. at 248). Thus, the fact in question must be essential to the cause of action at bar; "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Flones v. Beaumont Health Sys.*, 567 F. App'x 399, 404 (6th Cir. 2014) (emphasis removed) (internal quotation marks omitted) (citing *Anderson*, 477 U.S. at 247-48).

**B.     Disparate-treatment claim under Title VII[4]**

Wilson County is entitled to summary judgment on Tartt's disparate-treatment claim under Title VII because he fails to establish a prima facie case of discrimination. Title VII prohibits employers from failing or refusing to hire any individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Courts have recognized two types of claims under Title VII: disparate-treatment claims and disparate-impact claims. *Serrano v. Cintas Corp.*, 699 F.3d 884, 892 (6th Cir. 2012) (quoting *Huguley v. Gen. Motors Corp.*, 52 F.3d 1364, 1370 (6th Cir. 1995)). Disparate-treatment claims involve intentionally discriminatory employment practices. *Id.*

---

[4]Tartt also brought his claims under 42 U.S.C. §§ 1981 and 1983. The elements of a prima facie case and the burden-shifting framework followed by courts in adjudicating such claims are the same as those in cases under Title VII. *See, e.g.*, *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 n.1 (1993). We therefore proceed with the Title VII analysis for both sets of claims.

Accordingly, a plaintiff asserting a disparate-treatment claim must prove an employer's discriminatory motive and connect that motive to a particular adverse employment decision. *Id.* (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335-36 n.15 (1977)). A plaintiff may prove discriminatory intent through direct or circumstantial evidence. *Id.* (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002); *Foster v. Cuyahoga Cnty. Bd. of Comm'rs*, No. 97-3504, 1998 WL 57481, at *1 (6th Cir. Feb. 3, 1998)).

Where a plaintiff seeks to prove discriminatory intent based solely on circumstantial evidence, we apply the three-step, burden-shifting framework of *McDonnell Douglas Corp. v. Green*. *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)). Under this framework, a plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If he is successful, then the employer must respond with a legitimate, non-discriminatory reason for the adverse action in question. *Id.* The burden then shifts back to the plaintiff to show that the employer's stated reason is merely a pretext for discrimination. *Id.* at 804. The elements of a prima facie case will depend on the particular facts underlying a plaintiff's claim, *id.* at 802 n.13, and "the key question is always whether . . . the plaintiff has presented sufficient evidence that he or she suffered an adverse employment action under circumstances which give rise to an inference

of unlawful discrimination," *Thompson v. UHHS Richmond Heights Hosp., Inc.*, 372 F. App'x 620, 624 (6th Cir. 2010) (quoting *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 703 (6th Cir. 2007) (internal quotation marks omitted)).

To establish a prima facie case of discrimination here, Tartt must show "(i) that he belongs to a racial minority; (ii) *that he applied and was qualified for a job for which* [*Wilson County*] *was seeking applicants*; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and [Wilson County] continued to seek applicants from persons of [Tartt's] qualifications." *McDonnell Douglas*, 411 U.S. at 802 (emphasis added).

It is undisputed that Tartt meets the first prong of the test. As an African-American, he is a member of a racial minority. However, Tartt does not show that he "applied and was qualified for a position for which [Wilson County] was seeking applicants," and thus fails to establish the second prong of the test. *Id.*

The uncontroverted evidence shows that Wilson County did not have an open position in Animal Control at the time Tartt applied in December 2008. The County had filled the most recent opening three months prior, and there were no further vacancies until nearly two years later, when Animal Control advertised for a new director in October 2010. Tartt presents no evidence that Animal Control had an open position or was seeking applicants when he applied "for the job of animal control officer" in 2008. (R.110-2, Page ID #1614.)

Tartt counters that he applied for *any* open position the County may have had, including those that became available in Solid Waste Disposal in the months following his application. (R.18, Page ID #164.) He supports this interpretation with the facts that he wrote "Animal Control/open position" at the top of his application and that he asked more than once if his application was still on file. Even taking both these facts into account, the record clearly demonstrates that Tartt applied for a position *in Animal Control* in December 2008. When he first arrived at the Department offices, he was asked which application he wanted to fill out, because there was more than one; he chose the application for Animal Control. On his follow-up calls, he reiterated his interest in a job for Animal Control. Though duly informed there were separate applications, Tartt neither mentioned nor requested an application for a position in Solid Waste Disposal, either in person in December 2008 or during any of his three phone calls in 2009. All references to keeping his resume on file took place in the context of a conversation about an Animal Control position.

Tartt also specified that he applied for Animal Control in both his EEOC charge and his first two complaints in this litigation. (R.110-2, Page ID #1614; R.1, Page ID #11; and R.13, Page ID #76.) These documents contradict his current argument that he intended to be considered "for *any* open position." (Appellant Br. 37 (emphasis in original).) The Supreme Court has stated that "a party cannot

create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement . . . without explaining the contradiction." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). In his third complaint and now on appeal, Tartt states that the omission was because "there is not enough room on a[n EEOC] charge sheet to relay all facts of a case." (Appellant Reply Br. 3.) While it is true he had to summarize his overall argument, in a failure-to-hire claim for discrimination, the position(s) for which plaintiff applies are a fundamental aspect of the claim. Failure to even mention them in not one, but three documents in the same case strongly suggests Tartt did not intend to apply outside the Animal Control department when he submitted his application. And, his subjective intent cannot overcome the absence of any notice to the County that he sought a position in the Solid Waste Disposal department.

The Animal Control department only had one opening in the period between December 2008 and the filing of this case. The district court rightly observed that "Tartt's observation that the Animal Control Department posted an opening for a Director in October 2010 . . . is a red herring. . . . Tartt applied for a position as an Animal Control Officer, not the Director of the Department. Among other problems with Tartt's argument, Tartt has not shown that he was qualified for the Director position, which requires [among other things] an applicant to possess and maintain a valid euthanasia certification." (R.118, Page ID #3809.)

Based on the record, Tartt cannot show that he "applied and was qualified for a job for which [Wilson County] was seeking applicants." *McDonnell Douglas*, 411 U.S. at 802. He has not established a prima facie case of discrimination under a disparate-treatment theory under Title VII. Accordingly, Wilson County is entitled to summary judgment.

## C.    Disparate-impact claim under Title VII[5]

Tartt bases his disparate-impact claim on "Wilson County's policy and practice of not advertising job openings and instead refering [sic] such jobs to white friends and families." (Appellant Br. 33.) Wilson County is also entitled to summary judgment on Tartt's disparate-impact claim under Title VII because he fails to identify with particularity how he personally has been harmed by the County's alleged discriminatory practices. "Title VII prohibits employment practices that are 'fair in form but discriminatory in action.'" *Dunlap v. Tenn. Valley Auth.*, 519 F.3d 626, 629 (6th Cir. 2008) (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971)). While disparate-treatment claims require a showing of an employer's discriminatory intent, disparate-impact claims do not. *Id.* Instead, a plaintiff must show that "a facially neutral employment practice falls more harshly on one group than another and that the practice is not justified by

---

[5]*See supra* note 4.

business necessity." *Id*. (citing *Rowe v. Cleveland Pneumatic Co.*, 690 F.2d 88, 92 (6th Cir. 1982)).

Disparate-impact claims are evaluated under a three-part, burden-shifting framework. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425 (1975); *Dunlap*, 519 F.3d at 629. Under this framework, a plaintiff must first establish a prima facie case of discrimination. *Albemarle*, 422 U.S. at 425. "If he succeeds, the employer must show that the protocol in question has 'a manifest relationship to the employment'—the so-called 'business necessity' justification." *Dunlap*, 519 F.3d at 629 (citing *Griggs*, 401 U.S. at 431). The plaintiff must then show that other methods could accomplish the same goals "without creating the discriminatory effect." *Id*. (citing *Albemarle*, 422 U.S. at 425).

To establish a prima facie case of discrimination on a disparate-impact theory, a plaintiff must 1) identify a specific employment practice to be challenged and 2) prove through relevant statistical analysis that the challenged practice has an adverse impact on a protected group. *Id*. (citing *Johnson v. U.S. Dep't of Health & Human Servs.*, 30 F.3d 45, 48 (6th Cir. 1994)). We have found that, under the basic principles of legal standing, the plaintiff must also have "'a personal stake in the outcome of the controversy' and that the plaintiff must have suffered some real or threatened injury." *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 577 (6th Cir. 2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Thus, a

plaintiff making an individual disparate-impact claim for discrimination must show "that the challenged policy directly disadvantaged him in some fashion." *Id.* (citing *Bowdish v. Cont'l Accessories, Inc.*, No. 91-1548, 1992 WL 133022, at \*5 (6th Cir. June 12, 1992) ("An individual plaintiff in an employment discrimination case must present some evidence that demonstrates that his or her *individual* discharge was the result of discrimination." (emphasis in original)) (holding that "[w]hatever the validity of [plaintiffs'] disparate impact claims . . . the plaintiffs [could] not show that the policies injured them personally, and therefore their claim must fail").

The district court found against Tartt and entered summary judgment for Wilson County on the basis of this last requirement. While Tartt alleges a number of instances of racial discrimination perpetrated by officers of Wilson County, he does not show that he a) applied for a position outside the Animal Control department—in which there were no open positions when he applied or for months thereafter—or b) that the County's alleged racist practices injured him in some concrete way. Tartt thus lacks standing to proceed under a disparate-impact theory.

On appeal, Tartt urges us to relax the requirements for a prima facie case. He argues that under the district court's analysis, it would be impossible for him to establish standing. The County does not advertise most job openings; instead, it

fills vacancies through nepotism and by word-of-mouth. Without advertisement, Tartt could not reasonably have known of other available positions and have applied for them. As such, he was denied a fair opportunity to compete for those jobs, and was never able to reach the stage of a concrete adverse employment decision.

It is true that other circuits have modified the standards for a prima facie case where, as here, "the hiring process itself, rather than just the decision-making behind the process, is implicated in the discrimination claim or is otherwise suspect." *E.E.O.C. v. Metal Servs. Co.*, 892 F.2d 341, 349 (3d Cir. 1990). Tartt cites a number of cases in other jurisdictions that have relaxed one or another element of the prima facie case to allow plaintiffs to survive summary judgment or other preliminary dispositions of their case. However, we note that in each case— including cases that Tartt cites—the court took leave to do so explicitly based on specific evidence of the impact the alleged practices had on the plaintiffs in the case. *See, e.g.*, *Gaines v. Boston*, 998 F. Supp. 91, 108 (D. Mass 1998) (finding certain plaintiffs could challenge a company's policy of hiring friends and family of current, white staffers and using a separate hiring process for those applicants); *Metal Servs. Co.*, 892 F.2d at 350 (finding in a disparate treatment case that plaintiffs established a prima facie case where they had applied to specific positions through appropriate channels and were repeatedly passed over for white

applicants who were hired by word of mouth); *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1133 (11th Cir. 1984) (finding in a disparate treatment case that an employer "has a duty to consider all those who might reasonably be interested" where the record clearly showed that the plaintiff had repeatedly communicated his interest in a specific job to the employer and the employer used informal means to hire for open positions); *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1560 (11th Cir. 1986) ("[N]onapplicants may be entitled to relief where the employer's clear policy of exclusion would make an application a useless exercise[, but that result] requires two distinct determinations: that the nonapplicant would have applied but for discrimination and that he would have been discriminatorily rejected had he applied." (quoting *Teamsters*, 431 U.S. at 367-68)).

Taken together, these cases demonstrate that loosening the requirements of the prima facie case can at times be necessary to obtain justice under Title VII. However, Tartt has not presented evidence that he has such a case. As the district court concluded, Tartt applied for a position that was advertised; this was the sole position for which he applied. We therefore affirm the district court's grant of summary judgment to Wilson County on the disparate-impact claim.

**D.  Application under the Tennessee Human Rights Act**

Tartt also alleged discrimination under the THRA.  Specifically, Tartt argues that we must employ the summary judgment standard articulated by the Supreme Court of Tennessee in *Gossett v. Tractor Supply Co.*, 320 S.W.3d 777 (Tenn. 2010).  Under *Gossett,* "a party moving for summary judgment must produce evidence or refer to evidence in the record that affirmatively negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial."  *Id.* at 782 (quoting *Mills v. CSX Transp., Inc.*, 300 S.W.3d 627, 631 (Tenn. 2009) (internal quotation marks omitted)).  The district court found this argument to be moot, because soon after *Gossett* was published, the Tennessee state legislature abrogated the case by statute.  *See* Tenn. Code Ann. § 4-21-311(e).  On appeal, Tartt responds that the legislature explicitly intended for the law to apply to "causes of action accruing on or after June 10, 2011."  *See Weaver v. Diversicare Leasing Corp.*, No. E2013-01560-COA-R3CV, 2014 WL 3734579 (Tenn. Ct. App. July 28, 2014) (citing 2011 Tenn. Pub. Acts 461; *Coleman v. Humane Society of Memphis*, No. W2012–02687–COA–R9–CV, 2014 WL 587010 at *8 n. 7 (Tenn. Ct. App. Feb. 14, 2014)).  In this case, Tartt's causes of action accrued no later than August 2009, when he filed his complaint with the EEOC.  Under the fundamentals of *Erie* Doctrine, he

says, we must therefore apply *Gossett*'s summary judgment framework in evaluating Wilson County's motion.

Tartt's argument is unavailing. We have already considered cases similar to Tartt's and found that federal law—*i.e.*, the *McDonnell Douglas* framework— applies. *See Scola v. Publix Supermarkets, Inc.*, 557 F. App'x 458, 463-65 (6th Cir. 2014) (holding that while a plaintiff's THRA cause of action accrued before *Gossett* had been abrogated, the *Gossett* standard was procedural, and therefore the federal *McDonnell Douglas* standard was appropriate for a federal court sitting in diversity). We have therefore properly addressed Tartt's THRA claims under the Title VII analysis above, and affirm the district court's finding that the *Gossett* standard does not apply in Tartt's case.

## III.   CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's grant of summary judgment in favor of Wilson County.